UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff/Respondent,<br><br>         v.<br><br>JAIME ARANA DEL TORO,<br><br>                    Defendant/Petitioner. | Case No. 16-CV-02538-LHK<br>Case No. 12-CR-00670-LHK<br><br>**ORDER DENYING IN PART § 2255<br>MOTION AND DIRECTING<br>GOVERNMENT TO OBTAIN<br>DECLARATION FROM<br>PETITIONER'S COUNSEL**<br><br>Re: Dkt. No. 1 (16-CV-02538-LHK)<br>Re: Dkt. No. 423 (12-CR-00670-LHK)[1] |

Petitioner Jaime Toro ("Petitioner") has filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. ECF No. 423 ("Mot."). Petitioner is currently serving a 120-month, mandatory-minimum sentence of imprisonment for his July 8, 2015 conviction for possessing with intent to distribute 50 grams or more of methamphetamine.

Petitioner's § 2255 Motion seeks relief on the following four grounds: (1) Petitioner's sentence was too severe "for mere transportation" of methamphetamine; (2) Petitioner's "limited

---

[1] All docket entries in this Order are to Case No. 12-CR-00670 unless otherwise noted.

1
Case No. 16-CV-02538-LHK
Case No. 12-CR-00670-LHK
ORDER DENYING IN PART § 2255 MOTION AND DIRECTING GOVERNMENT TO OBTAIN
DECLARATION FROM PETITIONER'S COUNSEL

United States District Court
Northern District of California

English" prevented him from "fully understanding" the "implications" of Petitioner's plea agreement; (3) Petitioner's counsel was ineffective because counsel did not provide him advice on the extent of Petitioner's rights, the rights Petitioner was giving up, and Petitioner's eligibility for potential benefits (such as the Fast Trak Program for Deportable Aliens); and (4) Petitioner's counsel was ineffective because counsel did not file an appeal. *Id.* at 5.

For the reasons stated below, Petitioner's first three grounds for relief are DENIED. As to Petitioner's fourth ground for relief, the Court directs the Government to subpoena Petitioner's counsel and obtain a declaration as to whether Petitioner asked his counsel to file an appeal and whether counsel refused to do so.

## I.      BACKGROUND

### A.  Factual Background

On December 4, 2013, a federal grand jury returned an indictment which charged Petitioner with (1) conspiring to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841 & 846; and (2) possessing with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841. ECF No. 117 at 7.

On April 8, 2015, Petitioner agreed to plead guilty to possessing with intent to distribute 50 grams or more of methamphetamine. ECF No. 314 ("Plea Agmt."). Petitioner entered into a binding plea agreement with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). *See* Fed. R. Crim. P. 11(c)(1)(C) (a "plea agreement may specify that an attorney for the government will agree that a specific sentence or sentencing range is the appropriate disposition of the case"). Petitioner and the Government agreed to the following recommended sentence: "120 months of imprisonment, five years of supervised release (with conditions to be fixed by the Court), and a $100 special assessment." Plea Agmt. at 5. Petitioner's sentence of 120 months of imprisonment is the statutory mandatory minimum for possessing with intent to distribute 50 grams or more of methamphetamine. *See* 21 U.S.C. § 841(b)(1)(A)(viii).

### B.  Plea Agreement and Change of Plea Hearing

2

Pertinent excerpts of Petitioner's plea agreement are reproduced below:

2.   I agree that I am guilty of the offense of which I am pleading guilty, and I agree that the following facts are true:

a.   The following is a summary of evidence that I possessed methamphetamine with the intent to distribute it.

b.   On September 5, 2013, at approximately 6:56 p.m., I called Efrain Canchola and asked if he had something there.  I asked how it was, and Canchola said it was clean, white and transparent.  I asked Canchola to make two packages of 112 and one package of 224.  I said I was going to come pick them up right now.  Canchola asked how long.  I said 10 minutes at most.

c.   Law enforcement officers monitored the court authorized pole camera at Canchola's residence . . . and at approximately 7:02 p.m., they observed me walk into the residence.   Approximately seven minutes later, I departed the residence.  Canchola delivered the methamphetamine to me when I was at his residence.  I intended to distribute the methamphetamine to others.

d.   Later that evening, a Contra Costa deputy stopped my car . . . and seized three cellophane wrapped sandwich baggies that contained methamphetamine.

e.   The DEA laboratory determined that the substance seized from this car was a mixture weighing approximately 331.3 grams (net weight) that contained d-methamphetamine hydrochloride with a purity of 98.9 percent.   The amount of actual (pure) methamphetamine was approximately 327.65 grams.

f.   On September 12, 2013, law enforcement officers executed a search warrant at Canchola's residence . . .  [and] Canchola was arrested at the scene.

g.   Law enforcement officers found approximately two pounds of methamphetamine in a drawer in a bedroom.  The agents also seized from the residence a ledger, and the last three entries next to the name "Jamie" [sic] match the quantities (in grams) of the order for drugs I gave Canchola on September 5, 2013.

h.   I stipulate and agree that the total weight of actual (pure) methamphetamine attributable to me for the purpose of determining relevant conduct is approximately 327.65 grams.

United States District Court
Northern District of California

3.  I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence.  I waive any defense based on venue, and I agree that this prosecution may be brought in the Northern District of California.

4.  I agree to give up my right to appeal my conviction, the judgment, and any orders of the Court.  I also agree to waive any right I have to appeal any aspect of my sentence, including any orders relating to forfeiture and/or restitution.

5.  I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective in connection with the negotiation of this Agreement or the entry of my guilty plea.  I also agree not to seek relief under 18 U.S.C. § 3582.

\* \* \*

18.  I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested.

19.  I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

20.  I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defenses, and the benefits and possible detriments of proceeding to trial.  I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

21.  I confirm that I read this entire Agreement with the assistance of a Spanish language interpreter and in the presence of my attorney.

Plea Agmt. at 3–7.  The agreement was signed by a certified Spanish language interpreter, who

stated that he had translated the plea agreement into Spanish for Petitioner.  *Id.* at 8.

The Court held a change of plea hearing on April 8, 2015, where Petitioner formally

entered his guilty plea.  ECF No. 313 at 1.   A certified Spanish language interpreter interpreted the

hearing for Petitioner.  Nonetheless, Petitioner chose to respond to numerous questions in English

4

Case No. 16-CV-02538-LHK
Case No. 12-CR-00670-LHK
ORDER DENYING IN PART § 2255 MOTION AND DIRECTING GOVERNMENT TO OBTAIN
DECLARATION FROM PETITIONER'S COUNSEL

without the assistance of an interpreter.  An excerpt of the change of plea colloquy is reproduced below.

The Court:  All right.  Ms. Sakamoto, would you please swear in Mr. Del Toro.

The Clerk:  Yes, Judge.  Sir, would you please raise your right hand.

(Jaime Arana Del Toro, Defendant, was sworn)

Petitioner:  Yes.

The Clerk:  Thank you, sir.

(All statements attributed to Petitioner were through the Spanish interpreter unless otherwise noted.)

The Court:  Mr. Del Toro, I have some questions to ask you.  If you need me to repeat or explain anything, would you please tell me?

Petitioner:  (in English) Okay.

The Court:  If you need to speak with your attorney before answering any question, would you please do so?

Petitioner:  (in English) Okay.

The Court:  You've taken the oath, which is a promise to tell the truth.  If you make an untrue statement during today's proceedings, the Government can use that statement to prosecute you for perjury.  Do you understand that?

Petitioner:  (in English) Yes.

The Court:  What is your true name?

Petitioner:  (in English) Jaime Arana del Toro.

The Court:  How old are you?

Petitioner:  (in English) Thirty.

The Court:  What is the highest level of schooling you attended?

Petitioner:  (in English) High school.

The Court:  Now, you're answering all of your questions in English.  My understanding is that if you do use the Spanish interpreter, you do have to respond in Spanish and have the interpreter translate your answer into English.

Petitioner:  (in English) I'm sorry.

The Court:  Not a problem.  No need to apologize.  I'm glad that you actually can hear both ways, in English and in Spanish, so we'll definitely make sure that you understand what is happening today.  Was this plea agreement translated into Spanish for you?

Petitioner:  Yes.

The Court:  Do you understand the plea agreement?

Petitioner:  Yes.

The Court:  Have you had enough time to discuss the plea agreement with your attorney?

Petitioner:  Yes.

The Court:  Has your attorney been able to answer your questions about the plea agreement?

Petitioner:  Yes.

The Court:  Are you satisfied with the services your attorney has provided to you?

Petitioner:  Yes.

* * *

The Court:  Is your decision to plead guilty free and voluntary?

Petitioner:  Yes.

* * *

The Court:  You are pleading guilty to what is called a binding plea agreement.  It is pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  What this means is that you have reached agreements with the Government in this plea, including you've reached an agreement as to what your sentence should be.  If I don't sentence you according to your agreements in this binding plea agreement, you can withdraw your guilty plea.  Do you understand that?

Petitioner:  Okay, yes.

* * *

The Court:  I'm next going to ask you about rights that you have[,] to make sure that you

6

United States District Court
Northern District of California

understand your rights and to make sure that you are freely giving up your rights.  The first question I have for you is, do you understand that you have the right to a jury trial?

Petitioner:  Yes.

The Court:  Do you give up that right?

Petitioner:  Yeah.

The Court:  Do you understand that you have the right to plead not guilty?

Petitioner:  Um, yeah.

The Court:  Do you give up that right?

Petitioner:  Yeah.

The Court:  Do you understand that you have the right to be represented by a lawyer at trial and at every stage of your criminal proceeding?

Petitioner:  Yes.

The Court:  Do you understand that if you could not afford a lawyer, the Court would appoint a lawyer to represent you?

Petitioner:  Yes.

The Court:  Do you understand that you have the right at trial to see, hear, and ask questions of witnesses against you?

Petitioner:  Yeah.

The Court:  Do you give up that right?

Petitioner:  Yeah.

The Court:  Do you understand that you have the right to testify and present evidence in your defense at trial?

Petitioner:  (in English) Yes.

The Court:  Do you give up that right?

Petitioner:  (in English) Yeah.

7

Case No. 16-CV-02538-LHK
Case No. 12-CR-00670-LHK
ORDER DENYING IN PART § 2255 MOTION AND DIRECTING GOVERNMENT TO OBTAIN
DECLARATION FROM PETITIONER'S COUNSEL

The Court:  Do you understand that you have the right to remain silent, not to testify, not to present any evidence or a defense at all?

Petitioner:  (in English) Yes.

The Court:  Do you give up that right?

Petitioner:  (in English) Yes.

The Court:  Do you understand that you have the right to call witnesses to come to trial to testify on your behalf and to have the Court order witnesses to come to court to testify?

Petitioner:  (in English) Yes.

The Court:  Do you give up that right?

Petitioner:  (in English) Yes.

The Court:  Do you understand if this case were to go to trial and you were to be convicted, you would have the right to appeal your conviction, the judgment, your sentence, and any orders made by this Court?

Petitioner:  (in English) Yes.

The Court:  Do you understand that in paragraph 4 of your plea agreement, you are giving up your right to appeal?

Petitioner:  (in English) Yeah.

The Court:  Do you understand that you also have the right to file other types of motions or petitions attacking orders made by the Court, including attacking your conviction and your sentence?

Petitioner:  (in English) Yes.

The Court:  Do you understand that in paragraph 5 of your plea agreement, you are giving up this right, except you are keeping the right to claim that your lawyer was not effective in negotiating your plea agreement or in your entry of a guilty plea?

Petitioner:  (in English) Yes.

*Id.* at 8–9.  The Government went on to state the offer of proof by reading directly from

Petitioner's plea agreement.  At the end of the Government's statement, the Court asked whether

8

Petitioner understood "the facts the Government [was] prepared to prove" at trial and whether "those facts [are] true and correct." Petitioner answered, "Yeah," again in English. *Id.* at 11. The Court subsequently found that Petitioner had "made a knowing, intelligent, free and voluntary waiver of rights," and accepted Petitioner's guilty plea." *Id.* at 12. Petitioner's sentencing was set for July 8, 2015.

### C. Sentencing

In advance of Petitioner's sentencing, the U.S. Probation Office prepared a presentence report, which was filed on June 22, 2015. ECF No. 360 ("Presentence Report" or "PSR"). For purposes of determining Petitioner's sentencing range under the U.S. Sentencing Guidelines, the presentence report found Petitioner to be a career offender. Under U.S.S.G. § 4B1.1(a), "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Here, Petitioner was over 18 when he committed the instant felony; the instant felony (possessing with intent to distribute 50 grams or more of methamphetamine) was a controlled substance offense; and Petitioner had two prior felony convictions for possession for sale of methamphetamine. Petitioner has never challenged the U.S. Probation Office's finding that Petitioner is a career offender.

The presentence report found Petitioner's total offense level to be 34. This finding reflected a base offense level of 32, a five level enhancement for being a career offender, and a three level reduction for acceptance of responsibility. *Id.* at 15. Given Petitioner's prior felony convictions for possession of methamphetamine, the presentence report determined Petitioner's criminal history score to be 6. *Id.* at 16–17. Normally, under the Sentencing Guidelines, a criminal history score of 6 would translate to a criminal history category of III. However, because Petitioner was found to be a career offender, the Sentencing Guidelines required Petitioner's

9

United States District Court
Northern District of California

1   criminal history category to be VI.  U.S.S.G. § 4B1.1(b) ("A career offender's criminal history

2   category in every case under this subsection shall be Category VI.").  "Based upon a total offense

3   level of 34 and a criminal history category of VI," Petitioner's Sentencing Guidelines range was

4   calculated to be 262 to 327 months of imprisonment.  PSR at 23.

5       At Petitioner's July 8, 2015 sentencing, the parties noted two errors in the June 22, 2015

6   presentence report—a minor typographical error in paragraph 21 and a mistake as to the total

7   weight of the methamphetamine in Petitioner's possession in paragraph 26.  PSR at 9, 11; ECF No.

8   438 ("Sentencing Tr.") at 5, 7.  Paragraph 26 mistakenly reported Petitioner as possessing 1.1167

9   kilograms of methamphetamine.  At sentencing, the parties and the Probation Officer agreed that

10  the total weight should be 327.65 grams, consistent with the amount stated in the plea agreement.

11  *Id.* at 7.

12      The U.S. Probation Office subsequently filed an amended presentence report on July 10,

13  2015 which corrected the typographical error in paragraph 21 and the total weight in paragraph 26.

14  ECF No. 374.  No other changes were made—Petitioner's total offense level (34), criminal history

15  category (VI), and Sentencing Guidelines range (262 to 327 months of imprisonment) remained

16  the same.  *Id.* at 23.

17      A certified Spanish language interpreter interpreted the sentencing hearing for Petitioner.

18  Sentencing Tr. at 2.  Nonetheless, Petitioner chose to respond to some questions in English without

19  the assistance of an interpreter.  For example, Petitioner stated in English that he "came to the

20  United States" when he was "five or six years old"; that he attended preschool through 11th grade

21  in English in the United States; that he attended elementary, middle, and high school in English in

22  the United States; and that he had lived in the United States for about 25 or 26 years.  *Id.* at 3–4.

23  During sentencing, Petitioner chose to answer some of the Court's questions in English, wrote a

24  letter in English himself for the Court to read, and gave his allocution in English.  *Id.* at 11–14.

25  The Court found Petitioner's command of English to be "excellent."  *Id.* at 14.

26      At sentencing, the Court again stated that Petitioner had entered into a binding plea

27                                                                    10

28

agreement with a sentencing recommendation of 120 months of imprisonment.  Should the Court

decline to adopt this sentencing recommendation, Petitioner could "withdraw his guilty plea and

the Government [could] withdraw its plea offer and go back to . . . the beginning of the case."  *Id.*

at 15.  The Court further agreed with the U.S. Probation Office's finding that Petitioner's

Sentencing Guidelines range was 262 to 327 months.  *Id.* at 16.  Ultimately, the Court sentenced

Petitioner to 120 months of imprisonment and a five year term of supervised release—the exact

terms stated in Petitioner's binding plea agreement.  ECF No. 370 at 1.

In exchange for Petitioner pleading guilty to possessing with intent to distribute 50 or more

grams of methamphetamine, the Government agreed at sentencing to dismiss Petitioner's charge

for conspiring to distribute 50 grams or more of methamphetamine.  Sentencing Tr. at 24.  The

Court entered judgment on July 13, 2015.  ECF No. 377.

### D.   § 2255 Motion

On May 10, 2016, Petitioner filed the instant § 2255 Motion.  On June 10, 2016, the Court

directed Respondent to answer the § 2255 Motion.  Case No. 16-CV-2538, ECF No. 2 at 2.  The

Court also provided Petitioner an opportunity to supplement his § 2255 Motion with a supporting

memorandum of points and authorities.  *Id.*  Petitioner filed his supporting memorandum on July

18, 2016.  ECF No. 431 ("Supp. Mem.").  Respondent filed a response on August 16, 2016.  ECF

No. 433 ("Opp'n").

## II.   LEGAL STANDARD

A Section 2255 motion to set aside, correct or vacate a sentence of a person in federal

custody entitles a prisoner to relief "[i]f the court finds that . . . there has been such a denial or

infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to

collateral attack."  28 U.S.C. § 2255(b).  Under Section 2255, "a district court must grant a hearing

to determine the validity of a petition brought under that section, [u]nless the motions and files and

records of the case conclusively show that the prisoner is entitled to no relief."  *United States v.*

*Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration in original) (emphasis omitted).  A court

11

Case No. 16-CV-02538-LHK
Case No. 12-CR-00670-LHK
ORDER DENYING IN PART § 2255 MOTION AND DIRECTING GOVERNMENT TO OBTAIN
DECLARATION FROM PETITIONER'S COUNSEL

United States District Court
Northern District of California

need not hold an evidentiary hearing where the prisoner's allegations, when viewed against the record, either do not state a claim for relief or are so palpably incredible as to warrant summary dismissal. *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). Accordingly, an evidentiary hearing is required only if: (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2) the petition, files, and record of the case can not conclusively show that the petitioner is entitled to no relief. *Howard*, 381 F.3d at 877.

### III.    DISCUSSION

Petitioner seeks relief on the following grounds: (A) Petitioner's sentence was too severe "for mere transportation" of methamphetamine; (B) Petitioner's "limited English" prevented him from "fully understanding" all the "implications" of Petitioner's plea agreement; (C) Petitioner's counsel was ineffective because counsel did not provide him advice on the extent of Petitioner's rights, the rights Petitioner was giving up, and Petitioner's eligibility for potential benefits; and (D) Petitioner's counsel was ineffective because counsel did not file an appeal. Mot. at 5. The Court addresses these grounds in turn.

### A.    Severity of Sentence

Petitioner has waived his right to challenge the severity of his sentence. As discussed above, Petitioner's plea agreement included provisions under which Petitioner: (1) gave up the "right to appeal [his] conviction, the judgment, and any orders of the Court," and (2) agreed "not to file *any* collateral attack on [his] conviction or sentence, *including a petition under 28 U.S.C. § 2255 . . .*, except that [he] reserve[d] [the] right to claim that [his] counsel was ineffective." Plea Agmt. at 4 (emphasis added).

At the change of plea hearing, Petitioner responded that he understood he was "giving up [his] right to appeal" and his "right to file other types of motions . . . including [motions] attacking [his] . . . sentence." Plea Tr. at 9. The Court found that Petitioner had "made a knowing, intelligent, free and volunteer waiver of rights and entry of a guilty plea." *Id.* at 12. Thus, the

12

United States District Court
Northern District of California

United States District Court
Northern District of California

1  record demonstrates that, except for ineffective assistance of counsel claims, Petitioner knowingly

2  agreed to waive his right to appeal or collaterally attack his sentence.  Petitioner's attempt to

3  challenge the length of his sentence falls squarely within the scope of these waiver provisions.

4       Even if the Court were to consider Petitioner's arguments on the merits, the Court would

5  find such arguments unavailing.  Petitioner's plea agreement states that Petitioner possessed with

6  intent to distribute 327.65 grams of methamphetamine.  Plea Agmt. at 4.  Petitioner has never

7  challenged this finding.  The federal statute upon which Petitioner was convicted, 21 U.S.C. §

8  841(b)(1)(A)(viii), prohibits possession with intent to distribute 50 grams or more of

9  methamphetamine, and imposes a mandatory minimum sentence of imprisonment of 120 months.

10  Hence, Petitioner was in possession of methamphetamine that was nearly seven times the amount

11  that triggers the 120-month statutory mandatory minimum.  Petitioner's Sentencing Guidelines

12  range, which Petitioner has also never disputed, was 262 to 327 months of imprisonment.

13  Pursuant to Petitioner's binding plea agreement, the Court sentenced Petitioner to 120 months of

14  imprisonment.  This sentence was significantly below Petitioner's Sentencing Guidelines range.

15       Moreover, Petitioner agreed to the 120-month sentence recommendation in his binding plea

16  agreement.  The Court stated, at both Petitioner's change of plea and sentencing hearings, that

17  Petitioner could withdraw his guilty plea if he was not sentenced in accordance with this

18  recommendation.  Petitioner did not move to withdraw his guilty plea at these hearings.

19       Finally, the Court could not have imposed a sentence below the statutory mandatory

20  minimum because Petitioner was not eligible for the safety valve.  U.S.S.G. § 5C1.2, commonly

21  known as the safety valve provision, allows courts to "impose a sentence in accordance with the

22  applicable guidelines without regard to any statutory minimum sentence."  U.S.S.G. § 5C1.2(a).

23  However, to be eligible for U.S.S.G. § 5C1.2, a defendant must, among other things, "not have

24  more than 1 criminal history point."  *Id.*  Here, the Court found that Petitioner not only had six

25  criminal history points, Sentencing Tr. at 17, but was a career criminal offender, two findings

26  which Petitioner has not challenged.  *Cf. United States v. Hernandez-Castro*, 473 F.3d 1004, 1006

27                                                           13

28  Case No. 16-CV-02538-LHK
    Case No. 12-CR-00670-LHK
    ORDER DENYING IN PART § 2255 MOTION AND DIRECTING GOVERNMENT TO OBTAIN
    DECLARATION FROM PETITIONER'S COUNSEL

1   (9th Cir. 2007) ("[C]ourts have no authority to adjust criminal history points for the purpose of

2   granting safety valve relief from a mandatory minimum sentence.").  Thus, Petitioner was not

3   eligible for the safety valve.

4           For all of the foregoing reasons, Petitioner has waived his right to challenge his sentence,

5   and, in any event, his sentence was not "too severe."  Consequently, Petitioner's request for habeas

6   relief on the basis that he received too severe a sentence is DENIED.

7       **B. Limited English**

8           Petitioner's second ground for relief—that his limited English prevented a full

9   understanding of the implications of his plea agreement—is similarly unavailing.  As above,

10   Petitioner has waived the right to assert such arguments pursuant to the terms of Petitioner's plea

11   agreement.  Petitioner may only seek collateral relief on ineffective assistance of counsel claims.

12   Arguments regarding Petitioner's limited English do not fall within this exception.

13           More importantly, there is no support in the record that Petitioner's allegedly limited

14   English impaired him in any way.  Petitioner's plea agreement was translated into Spanish for

15   Petitioner and signed by a certified Spanish language interpreter.  Plea Agmt. at 8.  A certified

16   Spanish language interpreter interpreted both the change of plea and sentencing hearings for

17   Petitioner.

18           Furthermore, the record shows that Petitioner lived in the United States for about 25 or 26

19   years and attended preschool through 11th grade in English in the United States.  Sentencing Tr. at

20   3.  Petitioner attended elementary, middle, and high school in English in the United States.  *Id.*

21   During Petitioner's change of plea hearing, Petitioner chose to respond to multiple questions in

22   English.  Plea Tr. at 2–4.  Notably, when the Court began to recite the rights that Petitioner was

23   giving up by pleading guilty, Petitioner answered many of the Court's questions in English.

24   Petitioner's answers to some of Court's questions were as follows:

25   The Court:  Do you understand that you have the right to testify and present evidence in your
26   defense at trial?

27
Case No. 16-CV-02538-LHK
28   Case No. 12-CR-00670-LHK
ORDER DENYING IN PART § 2255 MOTION AND DIRECTING GOVERNMENT TO OBTAIN
DECLARATION FROM PETITIONER'S COUNSEL

Petitioner:  (in English) Yes.

The Court:  Do you give up that right?

Petitioner:  (in English) Yeah.

The Court:  Do you understand that you have the right to remain silent, not to testify, not to present any evidence or a defense at all?

Petitioner:  (in English) Yes.

The Court:  Do you give up that right?

Petitioner:  (in English) Yes.

The Court:  Do you understand that you have the right to call witnesses to come to trial to testify on your behalf and to have the Court order witnesses to come to court to testify?

Petitioner:  (in English) Yes.

The Court:  Do you give up that right?

Petitioner:  (in English) Yes.

The Court:  Do you understand if this case were to go to trial and you were to be convicted, you would have the right to appeal your conviction, the judgment, your sentence, and any orders made by this Court?

Petitioner:  (in English) Yes.

The Court:  Do you understand that in paragraph 4 of your plea agreement, you are giving up your right to appeal?

Petitioner:  (in English) Yeah.

The Court:  Do you understand that you also have the right to file other types of motions or petitions attacking orders made by the Court, including attacking your conviction and your sentence?

Petitioner:  (in English) Yes.

The Court:  Do you understand that in paragraph 5 of your plea agreement, you are giving up this right, except you are keeping the right to claim that your lawyer was not effective in negotiating your plea agreement or in your entry of a guilty plea?

Case No. 16-CV-02538-LHK
Case No. 12-CR-00670-LHK
ORDER DENYING IN PART § 2255 MOTION AND DIRECTING GOVERNMENT TO OBTAIN
DECLARATION FROM PETITIONER'S COUNSEL

Petitioner:  (in English) Yes.

*Id.* at 8–9.  Three months after Petitioner's change of plea hearing, the Court sentenced Petitioner. During sentencing, Petitioner chose to answer some of the Court's questions in English, wrote a letter in English himself for the Court to read, and provided his allocution in English.  The Court commented that Petitioner's English appeared "excellent."  Sentencing Tr. at 14.

To conclude, there is no evidence from the record which suggests that Petitioner's English was limited or that his allegedly limited English impacted this case in any way.  Petitioner's request for habeas relief on the basis of his limited English is DENIED.

### C.  Ineffective Assistance – Extent of Petitioner's Rights and Eligibility for Potential Benefits

Third, Petitioner alleges that his counsel was ineffective because Petitioner "did not receive any advice as to the extent of my rights, the rights I was giving up, and related to any potential benefits that I could have qualified for, such as the Fast Track Program for Deportable Aliens." Mot. at 5.

The U.S. Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims.  "To prevail on a *Strickland* ineffective assistance of counsel claim, a defendant must establish that counsel's performance was deficient and that he was prejudiced."  *Bemore v. Chappell*, 788 F.3d 1151, 1162 (9th Cir. 2015).

As to deficient performance, counsel's representation is deficient if it falls "below an objective standard of reasonableness," as measured by prevailing professional norms.  *Strickland,* 466 U.S. at 687–88.  Given the "temptation for a defendant to second-guess counsel's assistance after [a] conviction or adverse sentence," the U.S. Supreme Court has stated that "counsel should be strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment."  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks and alterations omitted).  "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the

Case No. 16-CV-02538-LHK
Case No. 12-CR-00670-LHK
ORDER DENYING IN PART § 2255 MOTION AND DIRECTING GOVERNMENT TO OBTAIN
DECLARATION FROM PETITIONER'S COUNSEL

United States District Court
Northern District of California

circumstances." *Id.* (internal quotation marks and alteration omitted).

With respect to prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  "Th[is standard] requires a substantial, not just conceivable, likelihood of a different result."  *Cullen*, 563 U.S. at 189 (internal quotation marks omitted).

Here, Petitioner fails to satisfy both *Strickland* prongs.  First, there is no evidence in the record that indicates deficient performance by Petitioner's counsel.  Petitioner's plea agreement included the following provisions:

> 3.  I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence.  I waive any defense based on venue, and I agree that this prosecution may be brought in the Northern District of California.
>
> 4.  I agree to give up my right to appeal my conviction, the judgment, and any orders of the Court.  I also agree to waive any right I have to appeal any aspect of my sentence, including any orders relating to forfeiture and/or restitution.
>
> 5.  I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective in connection with the negotiation of this Agreement or the entry of my guilty plea.  I also agree not to seek relief under 18 U.S.C. § 3582.
>
> * * *
>
> 18.  I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested.

Plea Agmt. at 4, 7.  This agreement was translated into Spanish for Petitioner, and signed by a certified Spanish language interpreter.  *Id.* at 8.

At the change of plea hearing, Petitioner stated that Petitioner's counsel had been able to

Case No. 16-CV-02538-LHK
Case No. 12-CR-00670-LHK
ORDER DENYING IN PART § 2255 MOTION AND DIRECTING GOVERNMENT TO OBTAIN
DECLARATION FROM PETITIONER'S COUNSEL

United States District Court
Northern District of California

1    answer Petitioner's questions about the plea agreement and that Petitioner was satisfied with the

2    services his attorney had provided.  Plea Tr. at 4.  As noted in pages 7 through 9 of the change of

3    plea hearing transcript, the Court engaged in a colloquy with Petitioner where the Court asked

4    whether Petitioner agreed to give up certain rights as a result of his pleading guilty.  *Id.* at 7–9.

5    Petitioner answered the Court's questions in the affirmative.  *Id.*

6           Further, the results that Petitioner's counsel in fact achieved in the instant case—a binding

7    plea agreement with a statutory mandatory minimum sentence—do not reflect deficient

8    performance and show an absence of prejudice.  Petitioner has never challenged the Court's

9    finding that Petitioner possessed with intent to distribute 327.65 grams of methamphetamine, an

10   amount nearly seven times the amount that triggers the 120-month statutory mandatory minimum

11   sentence.  Moreover, Petitioner could not have received a sentence below the 120-month statutory

12   mandatory minimum sentence because he was ineligible for the safety valve.  As discussed above,

13   U.S.S.G. § 5C1.2, the safety valve provision, allows courts to "impose a sentence in accordance

14   with the applicable guidelines without regard to any statutory minimum sentence" if the defendant

15   does not have more than one criminal history point.  U.S.S.G. § 5C1.2(a).  In the instant case,

16   Petitioner had six criminal history points and was in fact a career criminal offender.  Thus,

17   Petitioner's sentence was the absolute minimum that Petitioner could have received.  Moreover,

18   had Petitioner not pleaded guilty pursuant to his plea agreement, Petitioner could have been

19   sentenced to between 262 to 327 months of imprisonment, pursuant to his Sentencing Guidelines

20   range.

21          As a final point, Petitioner's § 2255 Motion refers vaguely to potential benefits that

22   Petitioner gave up by pleading guilty pursuant to his plea agreement.  Neither Petitioner's § 2255

23   Motion nor his supporting memorandum, however, specify what these potential benefits were,

24   other than a reference to the Fast Track Program for Deportable Aliens.  For purposes of

25   completeness, the Court briefly discusses the fast-track program and why this program would not

26   have helped Petitioner.

27                                                                          18

United States District Court
Northern District of California

As the Ninth Circuit has explained, "[i]n the mid-1990s, federal districts along the border between the United States and Mexico—in Texas, New Mexico, Arizona, and California—began to use fast-track programs to address the growing number of immigration and drug offenses." *United States v. Marcial-Santiago*, 447 F.3d 715, 718 (9th Cir. 2006). "In an effort to manage large caseloads and save prosecutorial resources, federal prosecutors in these districts offered shorter sentences to defendants who pleaded guilty at an early stage in the prosecution and agreed to waive appeal and other rights.  Prosecutors effectuated the shorter sentences through charge-bargaining or recommendations for downward departures at sentencing." *Id.* (citations omitted); *see* U.S.S.G. § 5K3.1 ("Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides.").

The Northern District of California has a fast-track program.  However, such a program would have made no difference here.  The fast-track program allows district courts to depart downward from an individual's Sentencing Guidelines range, not from a statutory mandatory minimum sentence.  Thus, in *Ulloa-Navarro v. United States*, 47 F. Supp. 3d 1057 (S.D. Cal. 2014), the district court denied habeas relief on a substantially similar claim.  As the district court explained, "there is no indication that [d]efendant was eligible for the fast-track program or that it would have helped him, since he faced a mandatory minimum sentence." *Id.* at 1060.

Consistent with *Ulloa-Navarro*, the Court finds that Petitioner has not demonstrated prejudice on his claim that his counsel was ineffective in not explaining what rights or potential benefits Petitioner was giving up.  Mot. at 5.  Accordingly, habeas relief as to this ineffectiveness of counsel claim is DENIED.

### D. Ineffective Assistance – Right to Appeal

Finally, turning to Petitioner's last ground for relief—that he told his counsel to file an appeal, but his counsel did not do so—the Court finds that the record is incomplete.  As the Ninth Circuit has observed, if Petitioner "explicitly told his lawyer to appeal his case and his lawyer

19

United States District Court
Northern District of California

refused, then we are required by [U.S. Supreme Court precedent] to conclude that it was deficient performance not to appeal and that [Petitioner] was prejudiced." *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005). This holding applies even where—as in the instant case—Petitioner's plea agreement included an appeal waiver. *See id.* (stating, in *Sandoval-Lopez*, that "[a]n appeal would most probably have been dismissed because it had been waived").[2]

At present, the record does not provide sufficient information for the Court to decide (1) whether Petitioner in fact told his counsel to file an appeal, and (2) whether counsel refused to file an appeal on Petitioner's behalf. In a similar context, the district court in *Mandujano v. United States*, 2008 WL 5423215, *4 (E.D. Cal. Dec. 24, 2008), "direct[ed] Petitioner's attorney to submit a declaration setting forth facts that are relevant to the issue of whether Petitioner instructed him to file an appeal after Petitioner was sentenced." The Court adopts this approach to the instant case.

The Government is therefore ORDERED to obtain a declaration from Petitioner's counsel addressing (1) whether Petitioner in fact told his counsel to file an appeal, and (2) whether counsel refused to file an appeal on Petitioner's behalf. If Petitioner's counsel disputes Petitioner's account, then the Court will hold an evidentiary hearing for the limited purpose of determining whether Petitioner in fact asked his counsel to file a notice of appeal.

## IV.   CONCLUSION

The first three grounds for relief in Petitioner's § 2255 Motion are DENIED with prejudice. These grounds pertain to (1) the severity of Petitioner's sentence, (2) Petitioner's limited English, and (3) the rights and potential benefits of which Petitioner allegedly was not informed by his counsel. No certificate of appealability shall issue, as Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2).

The Court hereby ORDERS the Government to subpoena Petitioner's trial counsel and

---

[2] Even if Petitioner succeeds on this particular ineffective assistance of counsel claim, the remedy is not to start proceedings anew. Instead, the Court may allow an "appeal to proceed." *Sandoval-Lopez*, 409 F.3d at 1198.

20

Case No. 16-CV-02538-LHK
Case No. 12-CR-00670-LHK
ORDER DENYING IN PART § 2255 MOTION AND DIRECTING GOVERNMENT TO OBTAIN
DECLARATION FROM PETITIONER'S COUNSEL

United States District Court
Northern District of California

obtain a declaration on (1) whether Petitioner told his counsel to file an appeal, and (2) whether counsel refused to file an appeal on Petitioner's behalf.  This declaration shall be filed no later than October 7, 2016.

**IT IS SO ORDERED.**

Dated:  September 8, 2016.

_____
LUCY H. KOH
United States District Judge

Case No. 16-CV-02538-LHK
Case No. 12-CR-00670-LHK
ORDER DENYING IN PART § 2255 MOTION AND DIRECTING GOVERNMENT TO OBTAIN
DECLARATION FROM PETITIONER'S COUNSEL